UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOWARD A. MONIZ,

        Petitioner,

v.                                   CASE NO. 2:05-CV-71699
                                   HONORABLE  MARIANNE O. BATTANI

KENNETH McKEE,

        Respondent.

_____/

## OPINION AND ORDER
## DENYING THE HABEAS CORPUS PETITION AND
## DENYING PETITIONER'S MOTIONS FOR LIMITED DISCOVERY AND
## TO PROCEED IN PROPRIA PERSONA AND IN FORMA PAUPERIS

        Petitioner Howard A. Moniz has filed an application for the writ of habeas corpus under

28 U.S.C. § 2254.  Also pending before the Court are Petitioner's motions to engage in limited

discovery and to proceed *in propria persona* and *in forma pauperis*.  Respondent has not

answered the motions, but he urges the Court in an answer to the habeas petition to deny the

petition on the grounds that Petitioner's claims lack merit or are procedurally defaulted.  Because

the Court has found no merit in Petitioner's claims, the Court agrees that the application for

habeas relief must be denied.  The motions also will be denied.

**I.  Background**

        Petitioner was charged in Monroe County, Michigan with carjacking, second-degree

home invasion, unarmed robbery, third-degree fleeing and eluding a police officer, and resisting

and obstructing a police officer.  The charges arose from a home invasion at Jacqueline Pless's

residence in LaSalle Township on July 26, 1999.  The evidence adduced at trial indicates that

Petitioner stole $150.00 and jewelry from the Pless residence and then left the scene in Ms. Pless's vehicle. Following a broadcast about the incident, Officer William Rollins saw a car fitting the description of the stolen vehicle. He activated his overhead lights and followed the vehicle. The vehicle pulled over to the shoulder of the road, but as Officer Rollins got out of his patrol car, the vehicle that he was following drove off. A high-speed chase ensued. Officer Rollins observed the other vehicle slide through an intersection, go into a field, and strike an embarkment. He arrested Petitioner, with the help of a civilian, after Petitioner crawled out a window in the car. Petitioner had about $150.00 in his pocket.

Throughout the pretrial proceedings, Petitioner asserted his right to represent himself. The trial court denied his requests, and the Michigan Court of Appeals denied Petitioner's interlocutory application for leave to appeal the trial court's decision.

Petitioner's defense at trial was insanity, intoxication, and diminished capacity. The jurors obviously were not convinced by the defense theory, for, on February 16, 2001, they found Petitioner guilty of the lesser offense of unlawfully driving away an automobile (UDAA), Mich. Comp. Laws § 750.413, and guilty, as charged, of second-degree home invasion, Mich. Comp. Laws § 750.110a(3), unarmed robbery, Mich. Comp. Laws § 750.530, third-degree fleeing or eluding a police officer, Mich. Comp. Laws § 257.602a(3), and resisting or obstructing a police officer, Mich. Comp. Laws § 750.479.

The trial court sentenced Petitioner to imprisonment for concurrent terms of nineteen to thirty-five years for the home invasion and unarmed robbery, six to thirty-five years for fleeing and eluding a police officer and UDAA, and three and a half to ten years for resisting a police officer. The Michigan Court of Appeals affirmed Petitioner's convictions, *see People v. Moniz*,

No. 234431 (Mich. Ct. App. July 1, 2003), and on February 27, 2004, the Michigan Supreme

Court denied leave to appeal, *see People v. Moniz*, 469 Mich. 1012; 677 N.W.2d 26 (2004)

(table).

Petitioner filed his habeas corpus petition through counsel on April 29, 2005. His

grounds for relief read:

I.      The trial court denied Petitioners numerous constitutional rights by refusing to allow him to discharge his appointed attorney and represent himself.

II.     Petitioner was prejudiced by a "neutral" defense expert who did not view or consider his evidence before trial.

III.    The prosecutor denied Petitioner a fair trial with improper name calling, use of character evidence and argument, and other improper argument.

IV.     Petitioner was denied his privilege against self-incrimination and right to due process by a compelled interrogation by the state's expert witness.

V.      Petitioner was denied his right to due process by the court's action in refusing to hear and consider his motions.

VI.     Petitioner was denied his right to effective assistance of counsel at critical stages of the prosecution.

VII.    Petitioner was denied Sixth and Fourteenth Amendment rights by being denied the introduction of evidence on his behalf.

VIII.   The offenses were impermissibly manufactured by reprehensible, oppressive, illegal and unconstitutional conduct of government agents and officers, and Petitioner was entitled to a hearing and the introduction of evidence in support of these facts.

IX.     Petitioner was subjected to unconstitutional pretrial conditions at the jail that denied him due process and interfered with and prejudiced his court proceedings.

X.      Petitioner was denied his Fourteenth Amendment rights to equal

protection and due process of law by being disallowed to introduce evidence for mitigation at sentencing.

XI.   The trial court illegally conspired to deny Petitioner's civil and constitutional rights and to deprive him of fair trial court proceedings.

## II.  Standard of Review

Petitioners are entitled to the writ of habeas corpus only if they can show that the state court's adjudication of their claims on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original).  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly

established federal law was objectively unreasonable." *Id*. at 409. Section "2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quotation marks and citations omitted).

## III. Discussion

### A. Self Representation

Petitioner alleges that the trial court deprived him of his constitutional right to discharge his appointed attorney and to represent himself. The Michigan Court of Appeals ruled that Petitioner's request to represent himself was not unequivocal and that, even if it were unequivocal, the trial court was justified in concluding that Petitioner's tactics and conduct would have unnecessarily delayed and disrupted the proceedings.

Defendants in criminal cases possess a constitutional right to discharge counsel and to represent themselves when they voluntarily and intelligently elect to do so. *Faretta v. California,* 422 U.S. 806, 807 (1975). Petitioner repeatedly asked to represent himself before trial and, during trial, he made a standing objection to the denial of his request to represent himself. Because he was warned of the dangers of representing himself, the Court will assume, for purposes of this opinion, that Petitioner voluntarily and intelligently elected to represent himself.

The question is whether the trial court was justified in denying Petitioner's requests for self-representation. The Supreme Court has stated that "[t]he right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *Id*. at 834 n. 46. A trial court "may terminate self-

representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Id.* There is a "strong presumption against waiver of the constitutional right to counsel." *Fowler v. Collins*, 253 F.3d 244, 250 (6th Cir. 2001).

Petitioner was facing charges that could have resulted in a sentence of life imprisonment, and he stated at one point that he intended to raise the defenses of insanity, duress, and compulsion. The trial court denied Petitioner's requests to represent himself because the charges were serious, the defenses were difficult to prove, and there was a high possibility of a mistrial and further delay if Petitioner conducted his own defense. The trial court stated that it might be difficult to convince the jury that Petitioner was insane at the time of the offense if he assumed the role of a lawyer at trial. The trial court also noted that some of Petitioner's pleadings were "a virtual diary of [irrelevant] things that happened to him in other jurisdictions." The court opined that Petitioner's pleadings were representative of how he would conduct himself at trial and that it would be very difficult for Petitioner to conduct a trial, given the magnitude of the issues. (Tr. May 23, 2000, at 8-10.)

Although Petitioner initially was not unruly, he was disruptive, argumentative, and repetitive at times in subsequent proceedings. At a pretrial proceeding shortly before trial, the trial court held Petitioner in contempt of court several times because he interrupted the court and raised his voice. The court threatened to gag Petitioner or remove him from the courtroom if he acted up in front of the jury. (Tr. Feb. 9, 2001, at 15-19.) During trial, the trial court held Petitioner in contempt of court for calling the prosecutor an "asshole." (Tr. Feb. 15, 2001, at 161.)[1] The trial court also held Petitioner in contempt of court for using foul language and for

---

[1] This incident occurred outside the jury's presence.

raising his voice during post-conviction proceedings. (Tr. May 2, 2001, at 17.) These instances demonstrate that Petitioner was not "able and willing to abide by rules of procedure and courtroom protocol." *McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984). Therefore, the trial court was justified in refusing Petitioner's requests to represent himself.

### B. The Defense Expert

Petitioner alleges that he was prejudiced by the testimony of a court-appointed expert who did not listen to him or consider documentary evidence that he acquired after the interview with the expert, but before trial. According to Petitioner, the clinical psychologist appointed for him, Dr. Gerald Briskin, was a neutral witness, not a defense witness. The Michigan Court of Appeals concluded on review of this claim that there was nothing in the record, other than Petitioner's unsupported allegations, to support the contention that Dr. Briskin refused to cooperate with the defense.

The Supreme Court has held that, "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985). An indigent defendant has the right to the assistance of a competent psychiatrist, not a psychiatrist of his personal liking. *Id.* Thus, state courts do not violate Supreme Court precedent "by holding that *Ake* merely requires a competent psychiatrist, and not an independent one." *Smith v. Mitchell*, 348 F.3d 177, 208 n.10 (6th Cir. 2003).

Furthermore, the record does not support Petitioner's claim that his expert witness was

unwilling to listen to him or to consider his evidence. Dr. Briskin testified at trial about the circumstances of the crimes, as told to him by Petitioner. Dr. Briskin also testified that he disagreed with the State's expert witness, who determined that Petitioner's degree of intoxication did not reach the level of diminished capacity. Although Dr. Briskin did not think that Petitioner was legally insane when he committed the crimes, Dr. Briskin opined that the alcohol and cocaine in Petitioner's system would have had a significant impact on his ability to form a specific intent to commit the crimes. Petitioner's claim that Dr. Briskin was neutral and not a witness for the defense lacks merit.

### C. The Prosecutor

Habeas claim III alleges that the prosecutor deprived Petitioner of a fair trial by calling him names and by relying on character evidence and on his criminal record. The Michigan Court of Appeals reviewed this issue for plain error affecting substantial rights. Respondent therefore argues that Petitioner's claim is procedurally defaulted because the state court of appeals relied on Petitioner's failure to object to the challenged remarks at trial.

Procedural default is not a bar to substantive review of a meritless claim. *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *cert. denied*, 546 U.S. 1100 (2006); *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). And because the Court finds it more efficient to address the merits of Petitioner's claim than to analyze the claim as procedurally defaulted, the Court will excuse the alleged procedural default.

To prevail on a claim of prosecutorial misconduct, a petitioner must demonstrate that the prosecutor's conduct violated a specific constitutional right or infected the trial with such

unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). It is not enough to show that the prosecutor's conduct or remarks were undesirable or even universally condemned. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). On habeas review, the complained-of conduct must be so egregious as to render the entire trial fundamentally unfair. *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979)).

### 1. The Name Calling

During closing arguments, the prosecutor called Petitioner a "con," predator, thief, coward, and thug. (Tr. Feb. 15, 2001, at 116, 120, 149.) However, there was evidence indicating that Petitioner was all these things. He conned the tow truck operator into pulling his car away from a precipice and then refused to pay for the service; he preyed on a frail woman; he stole money and jewelry from the victim; he blamed other people for the consequences of his own conduct; and he threatened to cut up the tow truck operator.

The prosecutor was permitted to "argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir.), *cert. denied*, 546 U.S. 685 (2005). And because Petitioner testified at trial, the prosecutor was entitled to attack his credibility. *United States v. Veal*, 23 F.3d 985, 989 (6th Cir. 1994). The Court concludes that the prosecutor's name-calling did not violate a specific constitutional right, nor permeate the trial with flagrant misconduct that deprived Petitioner of a fundamentally unfair trial.

### 2. Petitioner's Criminal Record

During his rebuttal argument, the prosecutor made the following comments about

Petitioner's state of mind:

> And when you think about trying to evaluate his mental state, when you think about trying to figure out what's going on in his mind, I respectfully submit that something the doctors found significant and used in their evaluation, you should, too, and that is this man's criminal past. Armed robbery, 1982; breaking and entering -- two separate convictions for breaking and entering with the intent to commit larceny. I respectfully submit that in evaluating his mental state, that that speaks volumes as to what was going on in his mind back there in July of 1999.

> And when you think about whether you believe Mr. Moniz on the stand, again, think about the fact -- when you decide whether you believe what he's telling you or not, whether you believe his tale of woe, I respectfully submit that, again, you can think about his conviction for breaking and entering with intent to commit larceny. Someone who was trying to steal, I respectfully submit to you, you have the right, based on that, to not believe what he told you.

(Tr. Feb. 15, 2001, at 154-55.) According to Petitioner, this argument was an unfair reference to Petitioner's criminal record for the purpose of showing that Petitioner had a propensity to commit crimes and was not a credible witness.

The Sixth Circuit has explained that

> [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence . . . . While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003). Consequently, the state appellate court's decision -- that the prosecutor did not commit plain error by relying on Petitioner's criminal history -- cannot be deemed "contrary to" Supreme Court precedent under 28 U.S.C. § 2254(d). *See id.* Petitioner has no right to relief on the basis of his third claim.

### D. The Right Not to Incriminate Oneself

Petitioner alleges that he was denied his right not to incriminate himself when he was

interrogated by the State's expert witness. Petitioner contends that the purpose of a psychiatric interview is to rebut a defense psychiatric evaluation and, because he had not been evaluated by a defense expert at the time, he should not have been interviewed by the State's expert. Petitioner further alleges that he was not warned that the psychiatric examination could be used to gather evidence against him.

The Michigan Court of Appeals found no merit in these claims because Petitioner filed a notice of intent to raise an insanity defense and, therefore, under state law, he was subject to a psychiatric examination at the Center for Forensic Psychiatry. The court of appeals also stated that, compelling Petitioner to undergo a psychiatric examination on the issue of criminal responsibility did not violate his right against self incrimination because the State's expert witness limited her testimony to Petitioner's mental state.

### 1. *Estelle v. Smith*

The Fifth Amendment right not to be compelled to be a witness against oneself is implicated when the State uses a criminal defendant's disclosures during a pretrial psychiatric examination as evidence against the defendant in a subsequent court proceeding. *Estelle v. Smith*, 451 U.S. 454, 464-65 (1981). "A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him" at a subsequent proceeding. *Id*. at 468. The constitutional considerations that call for an accused to be warned prior to custodial interrogation that he has a right to remain silent and that anything said can be used against him in court, *see Miranda v. Arizona*, 384 U.S. 436 (1966), also apply to pretrial psychiatric examinations. *Estelle v. Smith*, 451 U.S. at 467.

Petitioner initiated a psychiatric evaluation, asserted an insanity defense, and introduced psychiatric testimony at trial. Thus, he could be compelled under *Estelle v. Smith* to cooperate with the State's evaluation of him. As explained by the Supreme Court, "[w]hen a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case." *Id.* at 465.

Petitioner nevertheless alleges that the statements he made to Dr. Donna Kelland, a psychologist employed by the State, should have been suppressed because he did not file a notice of intent to assert an insanity defense until after Dr. Kelland examined him for criminal responsibility. The Court, however, is not convinced that Petitioner's notice of intent to present a psychiatric defense had to precede Dr. Kelland's first interview with Petitioner. In *Estelle v. Smith*, there was no objection to the fact that the state court ordered a psychiatric evaluation even though defense counsel had not yet questioned the defendant's competency to stand trial or his sanity at the time of the offense.

Even if Petitioner is correct in asserting that a notice of intent to assert a psychiatric defense had to precede an examination for criminal responsibility, the following sequence of events illustrates compliance with Petitioner's reading of *Estelle v. Smith.*

September 16, 1999 - Dr. Kelland evaluated Petitioner for competency to stand trial.

October 29, 1999 - The state district court judge found Petitioner competent to stand trial.

December 6, 1999 - The state district court judge ordered an independent psychiatric evaluation at Petitioner's request. The defense expert, Dr. Gerald Briskin, subsequently interviewed Petitioner.

May 15 - 16, 2000 - Petitioner filed formal notices of intent to assert the defenses of

12

insanity and diminished-capacity.

> May 31, 2000 - Dr. Kelland interviewed Petitioner a second time, ostensibly for an evaluation of Petitioner's criminal responsibility.

This summary of the record suggests that Petitioner was not evaluated by Dr. Kelland for criminal responsibility, as opposed to competency to stand trial, until after Petitioner filed a notice of intent to assert the defenses of insanity and diminished capacity.

Petitioner maintains that his statements to Dr. Kelland should have been suppressed for an additional reason:  failure to warn him that his statements could be used against him.  Dr. Kelland, however, stated in her report on competency to stand trial that she advised Petitioner prior to the interview that she might be required to testify about her report or anything else related to the examination.  According to Dr. Kelland, Petitioner understood the limits on confidentiality pertaining to the court-ordered examination and participated in the interview.

## 2.  Harmless Error Analysis

Even if Petitioner's Fifth Amendment right not to incriminate himself was violated, the Court finds that the alleged constitutional violation was harmless in light of the overwhelming evidence against Petitioner.  There was no question about Petitioner's identity as the suspect. Jacqueline Pless identified Petitioner at trial as the person who entered her home uninvited and tied her up.  She informed Petitioner that she had $150.00 in her purse and that the keys to her car were in the console.  After Petitioner left her home, she heard a car start.  She recovered her money and her daughter's missing jewelry from the police after they arrested Petitioner.

The primary issue was whether Petitioner was insane, intoxicated, or suffering from diminished capacity.   The two expert witnesses who testified at trial agreed that Petitioner was not legally insane at the time of the offense.  Although it was clear that Petitioner was

intoxicated on the day in question, the two expert witnesses disagreed on whether Petitioner was so intoxicated that he suffered from diminished capacity. Petitioner's expert witness, psychologist Gerald Briskin, testified that Petitioner was intoxicated to the extent that his impairment would have had a significant impact on his ability to form specific intent. The State's expert testified on rebuttal that Petitioner did not suffer from diminished capacity.

Had the trial court suppressed the state expert witness's testimony, the jury would have been left with the testimony of Petitioner's expert witness and the other evidence. As noted, Petitioner's expert witness claimed that Petitioner's degree of intoxication reached the level of diminished capacity. However, there was considerable evidence from which the jury could have determined that, contrary to the defense expert witness's testimony, Petitioner was not so intoxicated that he was unable to form the intent necessary to commit the charged offenses. Ms. Pless testified that Petitioner understood what she said to him and that he seemed to know what he was doing. He talked sensibly to her, and he was able to find something with which to tie her hands. The evidence suggested that Petitioner went upstairs and took jewelry from a bedroom. He also took money from Ms. Pless' purse, and he drove away in her car.

Minutes later, the police recognized the car and signaled Petitioner to stop. Petitioner initially pulled over onto the shoulder of the road, but when a police officer exited his patrol car, Petitioner sped off. Petitioner admitted during trial that he knew at the time what the officer's flashing lights meant and that he deliberately disregarded the signal and pulled back onto the road. After he was arrested and advised of his constitutional rights, he informed the police officer that he understood his rights. Later, at the hospital where he was taken for injuries sustained in the car accident, he was able to answer the nurses' questions and communicate

information that was needed for an evaluation of his condition.

The Court concludes that the state expert witness's testimony could not have had a substantial and injurious affect or influence on the jurors' verdict. Therefore, the alleged violation of the Fifth Amendment was harmless error.

### E.  Motions

Petitioner alleges next that the trial court violated his right to due process by refusing to hear and consider several of his *pro se* motions. The state court of appeals found no merit in this claim because Petitioner was represented by counsel and did not have the right to argue his own motions.

Although criminal defendants possess a constitutional right to be heard and to defend themselves, *Crane v. Kentucky,* 476 U.S. 683, 690 (1986), Petitioner was represented by counsel throughout the proceedings. Therefore, the trial court's alleged refusal to hear Petitioner's *pro se* motions did not deprive Petitioner of due process. A defendant has no right to hybrid representation, *McKaskle v. Wiggins*, 465 U.S. at 183, that is, a right "to be heard both in person *and* by attorney." *United States v. Foster*, 9 F. R. D. 367, 372 (S.D. N.Y. 1949) (emphasis in original).

### F.  Counsel

Petitioner alleges that he was denied his right to effective assistance of counsel. The essence of this claim is that his first attorney, Brian Lambrix, operated under a conflict of interest and his subsequent attorneys did nothing to remedy the problem.

An attorney's "function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest." *Strickland v. Washington*, 466 U.S. 668,

688 (1984). "[T]he possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). "An 'actual conflict of interest' . . . is a term of art requiring a conflict of interest and adverse effect." *Moss v. United States*, 323 F.3d 445, 467 (6th Cir. 2003).

For a short time  during the early stages of the prosecution, Brian Lambrix represented Petitioner, as well as, the Erie Township Chief of Police and the towing company that assisted Petitioner on July 25, 1999.  However, Mr. Lambrix withdrew his representation of Petitioner when he realized the conflict in interest.  The trial court subsequently appointed another attorney to represent Petitioner in Lambrix' place.  In fact, Petitioner had four successive attorneys represent him after Lambrix withdrew from the case.

There is nothing in the record to suggest that Lambrix' brief representation of Petitioner compromised Petitioner's defense.  Therefore, Petitioner has failed to show an actual conflict of interest and adverse effect as a result of Lambrix' representation.  His subsequent attorneys were not ineffective for failing to raise a meritless claim about Lambrix' conflict of interest.  *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001); *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005), *cert. denied*, __ U.S. __, 126 S. Ct. 1142 (2006), *and cert. denied*, __ U.S. __, 126 S. Ct. 1145 (2006).

### G. Evidence

The seventh habeas claim alleges that Petitioner was denied his right to defend himself by his attorney's refusal to call and present witnesses that Petitioner wanted to testify. Petitioner contends that his attorney's failure to present the witnesses resulted in his own testimony going uncorroborated.

A defendant's right to due process in a criminal trial is, in essence, the right to defend against the State's charges. *Chambers v. Mississippi,* 410 U.S. 284, 294 (1973). "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Taylor v. Illinois*, 484 U.S. 400, 408 (1988).

Petitioner testified in his own behalf and presented nine other witnesses in his defense. He has not named the witnesses that he wished to present, nor stated what their testimony would have been. The Court concludes that Petitioner's right to present a defense was not violated.

### H. The Governmental Agents and Officers' Conduct

Petitioner alleges next that the charges against him were manufactured by governmental agents and officers, who left him stranded many miles from home following a car accident on the night before the home invasion. Petitioner asserts that, because he was drunk, sick, and mentally ill, it was inevitable that he would seek a ride and shelter in someone's home. Petitioner contends that the police set him up, knowing that the result would be a crime for which they could prosecute him, and that he was a victim of extortion because the police required him to do business with their towing company. The Michigan Court of Appeals reviewed this claim on the merits and concluded that Petitioner had failed to support a claim of entrapment.

Under the objective theory of entrapment, which Michigan has adopted, "entrapment occurs when the government induces or instigates the commission of a crime by one not ready and willing to commit it, rather than merely providing the opportunity to commit a crime." *Sosa v. Jones*, 389 F.3d 644, 647 (6th Cir. 2004) (citing *United States v. Russell,* 411 U.S. 423, 445 (1973)). Entrapment is not a constitutional defense, however, and therefore cannot form the basis for habeas relief. *See id.* at 647-49.

Furthermore, Petitioner has failed to allege any facts supporting a defense of entrapment. The tow truck driver testified at trial that Petitioner agreed to pay the towing fee, but after the job was done, Petitioner refused to pay. The tow truck driver then towed the car and impounded it. He gave Petitioner a ride to a gas station where he could make a telephone call.

Even if Petitioner were sick and left stranded by the tow truck driver as he claims, the circumstances did not entitle him to break into a residence, rob the occupant, and take her car. Petitioner's claim that law enforcement officials manufactured the charges against him lacks merit, because the record fails to show that officials induced or instigated the crimes.

### I. Pretrial Conditions

The ninth habeas claim alleges that pretrial conditions at the jail deprived Petitioner of due process and prejudiced his court proceedings. Specifically, Petitioner alleges that he was prevented from using the law library at the jail and thereby deprived of his constitutional right of access to the courts. The state court of appeals found no merit in this claim because Petitioner was represented by competent attorneys and the record did not support his additional claims that he was denied medical treatment or was subjected to inhumane treatment.

Prisoners have a constitutional right of adequate, effective, and meaningful access to the courts. *Bound v. Smith*, 430 U.S. 817, 821-822 (1977). This duty to provide pretrial inmates with access to the courts is satisfied if prison authorities "provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id*. at 828. Because Petitioner was represented by counsel throughout the pretrial proceedings and trial, his constitutional right of access to the courts was not violated. *Holt v. Pitts,* 702 F.2d 639, 640-41 (6th Cir. 1983). Furthermore, as the state court recognized, there is no evidence that other conditions at the jail

impeded Petitioner's defense.

**J. The Sentence**

The tenth habeas claim alleges that Petitioner was denied his constitutional rights to equal protection and due process of law by not being permitted to introduce mitigating evidence at sentencing. Specifically, Petitioner complains that the pre-sentence investigator censored his comments about the offenses and did not include his evidence in the pre-sentence report. The Michigan Court of Appeals stated that this issue was not preserved for appellate review because Petitioner did not challenge the accuracy of the pre-sentence report at sentencing. The court of appeals also stated that Petitioner had not shown plain error affecting substantial rights.

A sentence violates due process if it is based on "misinformation of constitutional magnitude," *Roberts v. United States*, 445 U.S. 552, 556 (1980) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)), or on "extensively and materially false" information, which the defendant had no opportunity to correct. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). Petitioner has not specified the information that he believes is incorrect or should have been included in his presentence report.

Furthermore, Petitioner's handwritten statement about the criminal incident on July 26, 1999, was attached to the pre-sentence report. Petitioner also had ample opportunity at his sentencing to correct any inaccuracies in his pre-sentence report and to present evidence in mitigation. His comments to the trial court consists of twenty pages. *See* Tr. Apr. 5, 2001, at 89-108. The Court concludes that Petitioner was not deprived of his right to present mitigating evidence at the sentencing and that his sentence was not based on materially false information, which he had no opportunity to correct.

### K.  Fair Trial

The eleventh and final claim alleges that the trial court conspired with others to deprive Petitioner of his constitutional right to a fair trial.  In support of this claim, Petitioner reiterates many of his other claims.  To the extent that Petitioner is arguing that the cumulative effect of errors deprived him of a fair trial, the argument lacks merit, because constitutional errors that would not individually support habeas relief cannot be cumulated to support habeas relief. *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005), *cert. denied*, __ U.S. __, 127 S. Ct. 557 (2006).

The Michigan Court of Appeals construed Petitioner's claim to allege judicial bias.  The court of appeals stated that the issue was not properly raised in the trial court and that the record failed to disclose factual support for Petitioner's claim that the trial judge was biased against him.

 This Court agrees.

"Under *Liteky* [*v. United States*, 510 U.S. 540 (1994)], a judge's misconduct at trial may be 'characterized as bias or prejudice' only if 'it is so extreme as to display clear inability to render fair judgment, *Liteky*, 510 U.S. at 551 (internal quotation marks omitted), so extreme in other words that it 'display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible,' *id*. at 555."  *Lyell v. Renico*, 470 F.3d 1177, 1186 (6th Cir. 2006).  The trial court made  substantial efforts to ensure that Petitioner's rights were not violated.  Among other things, the trial court listened to Petitioner's many arguments, appointed five different attorneys to represent him, granted continuances when necessary, and ruled in his favor on some evidentiary issues.  The Court concludes that the trial court was not biased or prejudiced against

Petitioner and did not conspire against him to deprive him of his constitutional rights.

## IV. Conclusion

The state appellate court's conclusions did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent. Therefore, Petitioner's application for the writ of habeas corpus is DENIED.

Petitioner's motion to engage in limited discovery is based on Petitioner's entrapment theory, his conflict-of-interest claim, and his allegation that he was deprived of access to a law library in the jail. As noted above, entrapment is not a ground for habeas relief, and Petitioner's right of access to the courts was not violated because he was represented by counsel. Petitioner also was not deprived of ineffective assistance of counsel due to a conflict of interest. Therefore, Petitioner's motion to engage in limited discovery [Dkt. 46, Nov. 30, 2006] is DENIED.

Petitioner's motion to proceed *in propria persona* and *in forma pauperis* [Dkt. 48, Mar. 12, 2007] seeks permission to discharge Petitioner's attorney and to proceed *in forma pauperis*. Whether Petitioner discharges his attorney is a personal issue for him to decide, and because he already paid the filing fee for this action, there is no need to grant him *in forma pauperis* status. Consequently, the motion to proceed *in propria persona* and *in forma pauperis* is DENIED as moot.

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Dated: September 25, 2007